**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SANDRA D. LOGAN,          ) | |
|   8532 Bauer Circle     ) | |
|   Springfield, VA  22152,  ) | |
|                   ) | |
|     Plaintiff,        ) | |
|                   ) | |
|       v.            ) | Civil Action No. 06-0033 |
|                   ) | (PLF) |
| MARGARET SPELLINGS,      ) | |
|   Secretary of Education,  ) | |
|                   ) | |
|     Defendant.        ) | |
| _____) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Preliminary Statement

1.) This is an action by plaintiff, Sandra D. Logan, to challenge the discriminatory and retaliatory termination of her employment as a Presidential Management Intern ("PMI") by the Office of Indian Education of the Department of Education, and its failure to convert Ms. Logan to career civil service status.

2.) The agency official responsible in the first instance for this discrimination and retaliation against Ms. Logan was her former first line supervisor, Mary Brayboy.

3.) Ms. Brayboy, who is deceased, did not participate in the investigation of Ms. Logan's administrative complaint, participate in proceedings before the Equal Employment Opportunity Commission, or to leave any sworn record of her treatment of Ms. Logan.

4.) The case arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and the Rehabilitation Act of

1973, as amended, 29 U.S.C. §§791 et seq., and challenges defendant's actions as discriminatory, because Ms. Logan is not Native American and on account of her disabilities; and as retaliatory, due to Ms. Logan's participation in activities protected under Title VII and the Rehabilitation Act.

5.)  To remedy defendant's unlawful actions, plaintiff seeks: a.) a declaration that defendant unlawfully subjected her to discrimination and retaliation; b.) an equitable order reinstating plaintiff with the Department of Education, awarding her backpay and benefits, and enjoining defendant from further violations of plaintiff's civil rights; c.) compensatory damages; and d.) an award of her attorneys' fees and costs.

## Parties, Jurisdiction, And Venue

6.)  Plaintiff Sandra D. Logan was employed by the Department of Education Office of Indian Affairs as a Presidential Management Intern ("PMI") during the actions which gave rise to this Complaint.  Ms. Logan is a Caucasian woman not of Native American origin who suffers from one or more disabilities.  She resides at the address recited in the caption of this Complaint.

7.)  Defendant Margaret Spellings is the Secretary of Education and as such is the official who heads the U.S. Department of Education, of which the Office of Indian Education is a part, the Executive Department which previously employed plaintiff and engaged in the acts of discrimination and retaliation that are the subjects of this action.  Defendant is sued in her official capacity only.

8.)    Jurisdiction of this Court is based upon 28 U.S.C. §1332, 29 U.S.C. §794a(a)(1), and 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-5(c)).    Venue lies in this judicial district pursuant to 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000-5(f)(3)), because defendant's acts occurred in this judicial district, where plaintiff was and would be employed but for the actions that are the subject of this Complaint.

## Statement Of The Case

### Background

9.)    Complainant, Sandra D. Logan, was hired as a Presidential Management Intern ("PMI") by the Office of Indian Education of the Department of Education ("Education" or "the agency") in December of 2001.

10.) The PMI program is a highly competitive government program administered by the Office of Personnel Management which allows participating agencies to recruit select candidates from institutions of higher learning directly into their workforces.    5 C.F.R. § 362.101.  Upon successful completion of their internships, PMI interns are automatically converted to the career civil service.    5 C.F.R. § 315.708.

11.) Before joining Education, Ms. Logan's career included eleven years on active duty in the U.S. Navy, where her performance was consistently appraised at the "exceptional" level and her record of conduct was unblemished.  Ms. Logan also holds a Masters Degree in Psychological Services, summa cum laude.

12.) Ms. Logan satisfactorily completed developmental rotations at three other agencies as a PMI before coming to Education's Office of Indian Affairs and completed each satisfactorily. She received commendations from both the Department of Health and Human Services and the Department of Veterans Affairs. The Department of Veterans Affairs praised Ms. Logan's "willingness to accept ... feedback provided by the supervisor," noted that she was "[v]ery personable" and "[e]asy to work with."

13.) Before joining the Office of Indian Affairs, Ms. Logan was rated as an over 30% service connected disabled veteran by the Department of Veterans Affairs. This rating mainly resulted from three chronic medical conditions from which Ms. Logan suffers: Meniere's Disease (a cranial nerve disease that causes intermittent "attacks" of profound hearing loss, dizziness and vomiting); Dysthmia (low grade, chronic depression); and poorly controlled hypertension. Ms. Logan also suffers from Post Traumatic Stress Disorder with panic disorder. Ms. Logan's disabilities were exacerbated by defendant's treatment of her.

## Ms. Logan's Early Interaction With Ms. Brayboy

14.) The Office of Indian Affairs extends "a preference" for Native Americans in permanent employment.

15.) This preference for Native Americans extends to the conversion of PMI's to the career civil service.

16.) Unlike all of her former supervisors, Ms. Logan is not of Native American origin.

17.) Ms. Logan, unlike all of former supervisors, is also a qualified individual with a disability, as that term is used under the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§701 et seq.

18.) Ms. Logan notified Education of her disabilities and VA disability rating in applying to become a PMI and after reporting to duty, as well as of her need for reasonable accommodation.

19.) Despite Ms. Logan's notification, Ms. Brayboy delayed Ms. Logan's requests for accommodation, to the point of causing Ms. Logan great emotional distress, the exacerbation of her disabilities, and physical incapacitation.

20.) The week she reported to the agency, Ms. Logan asked Ms. Brayboy for an assessment by the Assistive Technology branch to evaluate her workspace and modify her telephone to help compensate for her intermittent hearing loss. Ms. Brayboy failed to respond.

21.) In January of 2002, Ms. Logan asked Ms. Brayboy for permission to attend an Education department-wide, day-long seminar for employees with disabilities. Ms. Brayboy denied Ms. Logan's request until Ms. Logan sought permission to attend three subsequent disability sessions.

22.) From the outset of Ms. Logan's internship, Ms. Brayboy also failed to perform the agency's obligations to Ms. Logan under the PMI program. Ms. Brayboy failed to provide Ms. Logan with a position description, a work plan, performance standards; or required performance evaluations; denied her requests to participate in required job-related training; and failed to prepare an Individual Development Plan for Ms. Logan's internship.

**Ms. Logan's Meeting With Agency Management On April 16, 2002**

23.) By the spring of 2002, Ms. Brayboy's failure to promptly respond to Ms. Logan's requests for accommodation or to fulfill the agency's obligations to her as a PMI created great friction between the two and between Ms. Logan and other agency managers. Ms. Logan justifiably viewed the agency's failures as threatening her health, career, and conversion to the civil service.

24.) These matters were brought to a head on April 16, 2002, at a meeting convened at Ms. Logan's request. The meeting was attended by Ms. Logan; Ms. Brayboy; Ms. Logan's second line supervisor, Cathie Martin (who, like Ms. Brayboy, is of Native American extraction); Bernard Garcia (who is also of Native American extraction), who had occasionally substituted as Ms. Logan's first line when Ms. Brayboy was absent; and the head of Education's PMI program, Joyce Boykin.

25.) The purpose of this meeting was to discuss the fact that Ms. Brayboy had denied Ms. Logan's requests for required training and career development; failed to fulfill her duties to prepare an Individual Development Plan for Ms. Logan's internship; and delayed or denied Ms. Logan's requests for reasonable accommodation. At this meeting, Ms. Logan also requested reassignment to an office other than the Office of Indian Affairs.

26.) After the foregoing meeting, Ms. Boykin sent Ms. Logan an e-mail stating that she thought the meeting "went well." There is no contemporaneous record that this meeting, which was convened by Ms. Logan, was disciplinary in nature, as the agency would later claim in terminating Ms. Logan's Presidential Management Internship and in

failing to extend her PMI internship or convert her to the career civil service.

27.) Instead of resolving differences between Ms. Brayboy and Ms. Logan, Ms. Brayboy's harassment continued after this meeting, causing Ms. Logan to experience increased difficulty in managing her disabilities. In order to accommodate her increased need to attend doctor appointments and seek treatment, on April 23, 2002, Ms. Logan sought permission from Ms. Brayboy to work an alternate work schedule. Although Ms. Logan's request was initially granted, Ms. Brayboy rescinded her approval a short time later.

### The Agency's Decision to Extend Ms. Logan's PMI Internship

28.) After the meeting between Ms. Logan and agency management on April 16, 2002, Education took steps to extend Ms. Logan's PMI appointment from September 9, 2002, to September 11, 2003.

29.) On April 19, 2002, Ms. Brayboy sent an e-mail to Ms. Boykin, Ms. Martin, and Mr. Garcia stating, "[a]s we expressed in the meeting it is our choice to extend [Ms. Logan's PMI] appointment."

30.) On May 3, 2002, Ms. Martin sent an e-mail to Ms. Boykin, the agency's PMI coordinator, requesting that Ms. Logan's conversion date be extended until September of 2003, and stating that the extension was being sought supposedly to provide Ms. Logan with "additional training, mentoring and developmental activities."

31.) Ms. Boykin acted on Ms. Martin's e-mail that same day by sending a letter to OPM requesting to extend Ms. Logan's PMI internship by one year.

32.) That same day, Ms. Martin sent an e-mail to Ms. Logan

informing her that the agency was seeking permission from OPM to extend her PMI appointment for another year.

33.) On May 9, 2002, OPM approved the agency's requested one year extension of Ms. Logan's internship. In turn, defendant notified Ms. Logan that OPM had approved the extension of her PMI internship until September 11, 2003.

### Ms. Logan's Initial Use Of The Administrative Complaints And Formal Accommodation Processes

34.) Ms. Logan reasonably believed that the agency's decision to extend her PMI internship rather than convert her to career civil service status and Ms. Brayboy's overall treatment of her were the products of discrimination and retaliation.

35.) Accordingly, on May 28, 2002, Ms. Logan sought EEO counseling over the agency's disparate and retaliatory treatment of her and its failure to provide her reasonable accommodation.

36.) Two days later, Ms. Logan submitted a report from her treating psychiatrist in support of her pending formal request for reasonable accommodation; specifically, relief from continued harassment by Ms. Brayboy by reassignment outside of the Office of Indian Affairs.

37.) Three weeks earlier, May 9, 2002, Ms. Logan had submitted paperwork to the agency's Disability Coordinator to formally request reassignment out of the Office of Indian Affairs as a reasonable accommodation. That request was supported by a report from Ms. Logan's treating physician documenting Ms. Logan's disabilities and advising the agency that one or more of her disabilities were exacerbated by stress in the workplace.

38.) Retroactive to June 1, 2002, the Department of Veterans Affairs would later raise Ms. Logan's disability rating from 50% to 70% based upon an exacerbation of her Dysthimic Disorder.

**The Agency's Decision To Terminate Ms. Logan's PMI Internship,
Not To Extend Ms. Logan's PMI Internship, And
Not To Convert Ms. Logan To Career Civil Service Status**

39.) Immediately after Ms. Logan initiated the administrative complaints process and formally requested reasonable accommodation, defendant issued two memoranda containing pretextual reasons that it would later use to terminate Ms. Logan's PMI internship and to refuse to convert her to civil service status.

40.) On June 4, 2002, Ms. Brayboy issued Ms. Logan a counseling memorandum which falsely described the April 16, 2002 meeting – the one Ms. Logan initiated to discuss Ms. Brayboy's failure to provide training, mentoring, and accommodation – as a disciplinary counseling session, and baselessly criticized Ms. Logan for her supposed failure to address work-related issues through her chain of command and to demonstrate good judgment and appropriate interpersonal skills.

41.) Six days later, June 10, 2002, Ms. Brayboy issued Ms. Logan a memorandum advising her that the agency did "not intend to convert [her] non-competitively to a career or career-conditional appointment" when her PMI internship expired in September of 2002, and that the agency would probably not extend her appointment through September of 2003, as the agency had previously advised Ms. Logan it would.

42.) Effective September 9, 2003, Education failed to extend Ms. Logan's PMI internship, terminated Ms. Logan's PMI internship, and failed to convert Ms. Logan to career civil service status.

## The Exacerbation of Ms. Logan's Disabilities

43.) On June 18, 2002, the agency's Disability Coordinator, contacted Ms. Logan's treating physician to obtain additional medical information.

44.) On June 24, 2002, Ms. Logan's doctor responded that the stress of Ms. Logan's job was exacerbating her hypertension and causing more frequent Meniere's attacks.

45.) The increasing stress and hostility to which Education subjected Ms. Logan eventually triggered a major depressive episode, which rendered Ms. Logan completely unable to function.

46.) On August 9, 2002, Ms. Logan presented Ms. Brayboy and her second line supervisor, Ms. Martin, with a letter from her treating psychiatrist demonstrating that she was temporarily disabled for all forms of employment due to the exacerbation of her documented disabilities.

47.) On August 19, 2002, Ms. Brayboy issued Ms. Logan a memorandum placing her on Absent Without Leave (AWOL) status effective August 12, 2002.

48.) On August 20, 2002, Ms. Logan hand-delivered a formal request for a medical leave of absence without pay based on her worsening health conditions, and to have her PMI internship placed on hold until she was able to return to work.

49.) Ms. Logan handed the request to Ms. Brayboy, who threw it back at her. Ms. Brayboy did not act on Ms. Logan's request before Education terminated her effective September 9, 2002.

50.) The Department of Veterans Affairs later made a

determination to raise Ms. Logan's disability rating to 100%.

### Plaintiff's Protected Activities And
### Exhaustion Of Administrative Remedies

51.) Ms. Logan engaged in activity protected under the Rehabilitation Act when she notified defendant of her disabilities beginning with her written job application and again in December of 2001; and sought reasonable accommodation from defendant beginning no later than January of 2002, and continuing through August 20, 2002.

52.) Ms. Logan timely initiated the EEO administrative process by requesting informal counseling for the first time on May 28, 2002; timely filed her formal complaint of discrimination, retaliation, and failure to accommodate on July 10, 2002; and timely amended her formal complaint during the administrative EEO process.

53.) In her request for EEO counseling, her formal complaint of discrimination, the ensuing investigation at the agency level, and in proceedings before the Equal Employment Opportunity Commission, Ms. Logan timely challenged all of the employment actions that are the subjects of this action. Through these actions and others, plaintiff exhausted the administrative remedies available to her.

54.) This action has been initiated within 90 days of plaintiff's receipt of the agency's Final Action, dated October 19, 2005.

### Count I
### (Retaliation — Title VII)

55.) Plaintiff incorporates the allegations contained in paragraphs 1 through 54 above, as though fully set forth here.

56.) Plaintiff engaged in activity protected under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, when she pursued the informal and formal administrative EEO complaints processes, beginning no later than May 28, 2002.

57.) On August 9, 2002, plaintiff provided defendant with medical documentation showing that she was incapacitated and unable to work. Defendant responded by placing plaintiff on AWOL status. Plaintiff then requested a medical leave of absence and for the agency to postpone making a determination about the continuation of her PMI internship pending her recovery and return from medical leave. The agency failed to respond; instead, it terminated plaintiff's employment.

58.) Effective September 9, 2002, defendant terminated plaintiff's Presidential Management Internship on pretextual grounds.

59.) In charging plaintiff as AWOL and/or threatening her with AWOL; refusing to grant her a medical leave of absence; refusing to postpone making a determination about the continuation of her PMI internship pending her recovery and return from medical leave; and terminating plaintiff's Presidential Management Internship, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of Education, and took materially adverse action against plaintiff that would dissuade a reasonable worker from making or supporting a charge of discrimination, thereby retaliating against plaintiff on account of

her participation in activity protected under Title VII of the Civil Rights Act.

60.) Defendant violated of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-3), in retaliating against plaintiff for her protected activity by taking the foregoing actions.

61.) Defendant's violation of Title VII caused plaintiff to suffer physical and emotional pain, profound physical reversals, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## Count II
## (Retaliation – Title VII)

62.) Plaintiff incorporates the allegations contained in paragraphs 1 through 61 above, as though fully set forth here.

63.) Plaintiff engaged in activity protected under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, when she pursued the informal and formal administrative EEO complaints processes, beginning no later than May 28, 2002.

64.) Effective September 9, 2002, defendant failed to extend plaintiff's Presidential Management Internship or to convert plaintiff to career civil service status on pretextual grounds, and thereby defendant retaliated against plaintiff on account of her participation in activity protected under Title VII of the Civil Rights Act.

65.) In failing to extend plaintiff's Presidential Management Internship or to convert plaintiff to career civil service status, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment

opportunities, both within and outside of Education, and took materially adverse action against plaintiff that would dissuade a reasonable worker from making or supporting a charge of discrimination.

66.) Defendant violated of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-3), in retaliating against plaintiff for her protected activity by failing to extend plaintiff's Presidential Management Internship or to convert plaintiff to career civil service status.

67.) Defendant's violation of Title VII caused plaintiff to suffer physical and emotional pain, profound physical reversals, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**Count III**
**(Retaliation – Rehabilitation Act)**

68.) Plaintiff incorporates the allegations contained in paragraphs 1 through 67 above, as though fully set forth here.

69.) Plaintiff engaged in activity protected under the Rehabilitation Act of 1973, as amended, 29 U.S.C. §791, when she notified defendant of her disabilities beginning with her written job application and again in December of 2001; sought reasonable accommodation from defendant beginning no later than January of 2002 and continuing through August 20, 2002; and initiated and pursued the administrative EEO complaints processes, beginning no later than May 28, 2002.

70.) Plaintiff is an individual with a disability having a record of one or more physical impairments (specifically, Meniere's Disease, Dysthmia, Post Traumatic Stress Disorder with Panic Disorder, and hypertension), and is regarded by defendant as having one or more physical impairments.

71.) Plaintiff's disability substantially limits one or more life activities.

72.) Plaintiff is a qualified individual with a disability because, with or without reasonable accommodation, she is able to perform the essential functions of the position she encumbered with defendant.

73.) At all times relevant, plaintiff's disability was known to defendant.

74.) On August 9, 2002, plaintiff provided defendant with medical documentation showing that she was incapacitated and unable to work. Defendant responded by placing plaintiff on AWOL status. Plaintiff then requested a medical leave of absence and for the agency to postpone making a determination about the continuation of her PMI internship pending her recovery and return from medical leave. The agency failed to respond; instead, it terminated plaintiff's employment.

75.) Effective September 9, 2002, defendant terminated plaintiff's Presidential Management Internship on pretextual grounds.

76.) In charging plaintiff as AWOL and/or threatening her with AWOL; refusing to grant her a medical leave of absence; refusing to postpone making a determination about the continuation of her PMI

internship pending her recovery and return from medical leave; and terminating plaintiff's Presidential Management Internship, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of Education, and took materially adverse action against plaintiff that would dissuade a reasonable worker from making or supporting a charge of discrimination, thereby retaliating against plaintiff on account of her participation in activity protected under the Rehabilitation Act.

77.) Defendant violated the Rehabilitation Act of 1973, as amended, 29 U.S.C. §791, in retaliating against plaintiff for her protected activity by taking the foregoing actions.

78.) Defendant's violation of the Rehabilitation Act caused plaintiff to suffer physical and emotional pain, profound physical reversals, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

### Count IV
### (Retaliation — Rehabilitation Act)

79.) Plaintiff incorporates the allegations contained in paragraphs 1 through 78 above, as though fully set forth here.

80.) Plaintiff engaged in activity protected under the Rehabilitation Act of 1973, as amended, 29 U.S.C. §791, when she notified defendant of her disabilities beginning with her written job application and again in December of 2001; sought reasonable accommodation from defendant beginning no later than January of 2002 and continuing through August 20, 2002; and initiated and pursued the

16

administrative EEO complaints processes, beginning no later than May 28, 2002.

81.) Plaintiff is an individual with a disability having a record of one or more physical impairments (specifically, Meniere's Disease, Dysthmia, Post Traumatic Stress Disorder with Panic Disorder, and hypertension), and is regarded by defendant as having one or more physical impairments.

82.) Plaintiff's disability substantially limits one or more life activities.

83.) Plaintiff is a qualified individual with a disability because, with or without reasonable accommodation, she is able to perform the essential functions of the position she encumbered with defendant.

84.) At all times relevant, plaintiff's disability was known to defendant.

85.) Effective September 9, 2002, defendant failed to extend plaintiff's Presidential Management Internship or to convert plaintiff to career civil service status on pretext grounds and thereby retaliated against plaintiff on account of pursuit of activity protected under the Rehabilitation Act.

86.) In failing to extend plaintiff's Presidential Management Internship or to convert plaintiff to career civil service status, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of Education, and took materially adverse action against plaintiff that would dissuade a

reasonable   worker   from   making   or   supporting   a   charge   of
discrimination.

87.) Defendant violated the Rehabilitation Act of 1973, as
amended, 29 U.S.C. §791, in retaliating against plaintiff for her
protected activity by failing to extend plaintiff's Presidential
Management Internship or to convert plaintiff to career civil service
status.

88.) Defendant's violation of the Rehabilitation Act caused
plaintiff to suffer physical and emotional pain, profound physical
reversals, embarrassment, humiliation, mental anguish, inconvenience,
anxiety, depression, and loss of enjoyment of life.

## Count V
### (Discrimination – Title VII – Race/National Origin)

89.) Plaintiff incorporates the allegations contained in
paragraphs 1 through 88 above, as though fully set forth here.

90.) Plaintiff is a Caucasian woman who is not of Native
American race/national origin.

91.) Effective September 9, 2002, defendant terminated
plaintiff's Presidential Management Internship on pretextual grounds
and thereby discriminated against plaintiff on account of her
race/national origin.

92.) In terminating plaintiff's Presidential Management
Internship, defendant materially and adversely altered the terms,
conditions, and privileges of plaintiff's employment and plaintiff's
future employment opportunities, both within and outside of Education,
and otherwise subjected her to an adverse employment action.

93.) Defendant violated of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2), by discriminating against plaintiff on account of her race/national origin by terminating plaintiff's Presidential Management Internship.

94.) Defendant's violation of Title VII caused plaintiff to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**Count VI**
**(Discrimination – Title VII – Race/National Origin)**

95.) Plaintiff incorporates the allegations contained in paragraphs 1 through 94 above, as though fully set forth here.

96.) Plaintiff is a Caucasian woman who is not of Native American race/national origin.

97.) Effective September 9, 2002, defendant failed d to extend plaintiff's Presidential Management Internship or to convert plaintiff to career civil service status on pretextual grounds, and thereby discriminated against plaintiff on account of her race/national origin.

98.) In failing to extend plaintiff's Presidential Management Internship or to convert plaintiff to career civil service status, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of Education, and otherwise subjected her to an adverse employment action.

99.) Defendant violated of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2), by discriminating against plaintiff on account of her race/national origin by failing to extend plaintiff's Presidential Management Internship or to convert plaintiff to career civil service status.

100.) Defendant's violation of Title VII caused plaintiff to suffer to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## Count VII
### (Discrimination – Rehabilitation Act)

101.) Plaintiff incorporates the allegations contained in paragraphs 1 through 100 above, as though fully set forth here.

102.) Plaintiff is an individual with a disability having a record of one or more physical impairments (specifically, Meniere's Disease, Dysthmia, Post Traumatic Stress Disorder with Panic Disorder, and hypertension), and is regarded by defendant as having one or more physical impairments.

103.) Plaintiff's disability substantially limits one or more life activities.

104.) Plaintiff is a qualified individual with a disability because, with or without reasonable accommodation, she is able to perform the essential functions of the position she encumbered with defendant.

105.) At all times relevant, plaintiff's disability was known to defendant.

106.) Effective September 9, 2002, defendant terminated plaintiff's Presidential Management Internship on pretextual grounds, and thereby discriminated against plaintiff on account of her disability.

107.) In terminating plaintiff's Presidential Management Internship, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of Education, and otherwise subjected her to an adverse employment action.

108.) Defendant violated the Rehabilitation Act of 1973, as amended, 29 U.S.C. §791, in discriminating against plaintiff on account of her disability by terminating plaintiff's Presidential Management Internship.

109.) Defendant's violation of the Rehabilitation Act caused plaintiff to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**Count VIII**
**(Discrimination – Rehabilitation Act)**

110.) Plaintiff incorporates the allegations contained in paragraphs 1 through 109 above, as though fully set forth here.

111.) Plaintiff is an individual with a disability having a record of one or more physical impairments (specifically, Meniere's Disease, Dysthmia, Post Traumatic Stress Disorder with Panic Disorder, and hypertension), and is regarded by defendant as having one or more physical impairments.

112.) Plaintiff's disability substantially limits one or more life activities.

113.) Plaintiff is a qualified individual with a disability because, with or without reasonable accommodation, she is able to perform the essential functions of the position she encumbered with defendant.

114.) At all times relevant, plaintiff's disability was known to defendant.

115.) Effective September 9, 2002, defendant failed to extend plaintiff's Presidential Management Internship or to convert plaintiff to career civil service status on pretextual grounds, and thereby discriminated against plaintiff on account of her disability.

116.) In failing to extend plaintiff's Presidential Management Internship or to convert plaintiff to career civil service status, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of Education, and otherwise subjected her to an adverse employment action.

117.) Defendant violated the Rehabilitation Act of 1973, as amended, 29 U.S.C. §791, in discriminating against plaintiff on account of her disability by failing to extend plaintiff's Presidential Management Internship or to convert plaintiff to career civil service status.

118.) Defendant's violation of the Rehabilitation Act caused plaintiff to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and

loss of enjoyment of life.

**PRAYER FOR RELIEF**

Wherefore, plaintiff Sandra D. Logan respectfully requests that the Court enter judgment in her favor and award her the following relief.

A.    An Order declaring that defendant violated plaintiff's civil rights under the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§791 et seq., and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16.

B.    Reinstatement in defendant's employ with career civil service status, record correction and expunction.

C.    Backpay from September 9, 2002, until the date of plaintiff's reinstatement, as well as retirement and other benefits lost as a result of plaintiff's removal from the federal service.

D.    Compensatory damages in an amount to be determined at trial to compensate plaintiff for the physical and emotional pain, profound physical reversals, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of future career opportunities, loss of professional reputation, and loss of enjoyment of life caused by his termination.

E.    Pre- and post-judgment interest.

F.    The attorneys' fees and costs incurred by plaintiff.

G.    Such other relief as may be just and appropriate.

## Jury Demand

Plaintiff requests a trial by jury of all issues so triable.


Respectfully submitted,


_____/s/_____
Robert C. Seldon, Esq.
  D.C. Bar No. 245100


_____/s/_____
Molly E. Buie, Esq.
  D.C. Bar No. 483767

Robert C. Seldon & Associates, P.C.
1319 F Street, N.W.
Suite 305
Washington, D.C.  20004
(202) 955-6968

Counsel for Plaintiff